COCHRAN v. GIBSON et al. (No. 1703.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 1, 1917. Rehearing Denied Jan. 11, 1917.)

1. APPEAL AND ERROR ⬤⟹1033(8)—JUDGMENT FAVORABLE TO PARTY COMPLAINING.

In trespass to try title, where defendant sets up as his sole defense by way of answer that he has a life estate by virtue of contract, and that he made valuable improvements, the jury having found that there was no contract, but having awarded him $50 in money, his sole contention on appeal that the amount awarded was inadequate cannot be sustained, he not having pleaded a right to remove the improvements, and he not being entitled to recover anything in view of the finding as to the contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4060; Dec. Dig. ⬤⟹1033(8).]

2. EMINENT DOMAIN ⬤⟹2(1) — JUDGMENT AS DEPRIVING OF PROPERTY WITHOUT COMPENSATION.

A judgment based on findings duly made cannot be said to deprive of property without compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–8; Dec. Dig. ⬤⟹2(1).]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action of trespass to try title by Gip Gibson and others against Jim Cochran. Judgment for plaintiffs Gibson, and defendant appeals. Affirmed.

This was a suit of trespass to try title, brought by appellees, Gip Gibson and his wife, against appellant. The land sued for was 60 acres of the John Ferguson survey in Harrison county. Appellant's answer consisted of a plea of not guilty and a plea in which, after disclaiming any claim of title in himself to the fee, he asserted a right to occupy and use 30 acres of the land so long as he lived, by virtue of a verbal contract which, he alleged, he entered into with his brother, P. V. Cochran, at a time when the latter owned it, and in which he further alleged that, while occupying and using the land in accordance with such contract, he had made permanent improvements thereon, as specified of the value of $1,000. He prayed for judgment against appellees, Gip Gibson and his wife, and said P. V. Cochran, who had made himself a party plaintiff, in the

event they were awarded a recovery against him of the possession of the land.

It was agreed that P. V. Cochran owned the fee in the land prior to October 12, 1915, when he conveyed it to appellees, Gip Gibson and his wife. The controversy was as to whether appellant owned a life estate in it or not, and, if he did, as to his rights as the owner of such an estate. It appeared that he moved to the land in 1907, and, with his family, thereafterwards lived on it, and was living on it at the time of the trial. He testified:

"I am using about 15 acres. I am claiming only the land fenced up, which is about 15 acres. He told me to come there and build. He says, 'Jim, you will have a home as long as you live,' and if he hadn't give me that offer I wouldn't have built there. He told me he had 1,000 acres of land, and 'You will have all you make as long as you live.' This was a verbal conversation, and I went on the land and took possession of it and built some improvements. I cleared about 15 acres of land, fenced it, built a dwelling, barn, smokehouse, garden, dug a well, and set out an orchard. It was worth $150 to clear the land, $110 to fence it, $500 to build the dwelling house, barn, $100, smokehouse, $50, garden, $10, and well, $30. I wouldn't have gone on his or anybody else's land if I had known I wasn't getting it for life. * * * Me and Murray and a fellow Pleas [P. V. Cochran] had hired built the [dwelling] house. The lumber in the house came from the Rainey old mill, and I think P. V. Cochran paid for it and gave it to me. I made some of the boards, and don't know who paid for riving the others. Me and my son hauled them with my wagon and mule and one of Pleas' mules. The house is 32 feet long by 14 wide, three rooms, and no hall. The house was built of old lumber, and it is rotten down now. The house cost me away up yonder towards $50 or $60; paid it to the hardware men up town and first one and another. * * * I have no objection to Gip Gibson and his wife having the place. All I want is pay for my improvements, and that is all I am asking for now. Last fall my brother, Pleas, was talking to me about selling to J. C. Rogers, and I made no objection to it. * * * It was all right with me, the place wasn't mine. I didn't think he had any right to sell it without paying me for the improvements, but I didn't say anything to him about my improvements. I don't want the land. * * * Some time about October or November Gip Gibson sent me word he wanted the place January 1st. He told me he had bought it and paid cash for it. That was all right if he had paid me a little something for my improvements. * * * If I can get pay for my improvements, I don't want the land."

Dave Porter testified that about 1910 or 1911 he heard P. V. Cochran tell appellant that "there was the land, he could build and improve it, and he could have it as long as he lived."

John Wes Deaton testified that P. V. Cochran told him that he (P. V. Cochran) had told appellant to "go on the land and build on it, and he would give him all he made, or he would have a home as long as he lived," or something like that.

P. V. Cochran testified:

"Jim Cochran is my brother, and has lived in Texas since 1901, I think. He lived for three or four years on the Miles place, until Mr.

McKay, bought it from under him, and he then moved on my place, some time about the year 1907. He came to me saying he didn't know what to do, and I told him to move on this place until he could do better. I never did tell him or any other person he could have it for life. I built the house in which he lives. Frank Towlin, a boy I had hired, did the work. * * * There was no understanding or mention made between Jim [appellant] and I that he was to have the place for life, or that he was to have any pay for his improvements. I only offered to give him what he made. * * * My brother cleared about 15 acres of land, built a little barn, and got a few fruit trees on the place and set them out, and dug a well. I paid for the work on the house, which is about a 16 or 14 by 32 feet. It was an old mill torn down and moved. I moved the house and had it put up. Mr. McKay gave him some overhead ceiling, and Jim put it up. I had an old negro, George Johnson, to make the boards, and I had them hauled to the house. I furnished him stock for two years and made no charge for them. He has never paid anything for the use of the place, and I did not ask him for anything. The rental value of the place would be about $75 per year. I never had any conversation with him in Dave Porter's presence about letting him have the place, never told John Wes Deaton about letting him have the place, and never heard of any claim until after I sold the place to Gip Gibson."

Jim Gibson testified that it was worth about $8 an acre to clear and fence the land, about $25 each to furnish material and build the two cribs, $12 or $15 to build the smokehouse, $8 to clear and fence the garden, and 50 cents a foot to dig the well, which was 23 feet deep. G. E. Vanderslice testified to about the same effect, and in addition that he saw 12 or 15 fruit trees "around over the place."

The court instructed the jury to find in appellees' favor for the title and possession of the land, to find in appellant's favor for the value of improvements placed by him on the land, if they believed he made same under a contract that he "should have a life estate in the land," and to find for him the difference between the reasonable value of the improvements made by him on the land and the reasonable rental value thereof, if they believe there was no such contract, but that appellant lived on the land "from year to year and made thereon valuable improvements." These instructions were not excepted to, and are not complained of in the assignments of error in appellant's brief.

The verdict of the jury was in appellees' favor for the land, and in appellant's favor for $50 "for his improvements." The appeal is from a judgment rendered in accordance with the verdict.

Martin & Nelson, of Longview, for appellant. John W. Scott, of Marshall, and Campbell & Wyche, of Longview, for appellees.

WILLSON, C. J. (after stating the facts as above).

The correctness of the judgment is attacked on two grounds alone:

[1] 1. That it is contrary to and not supported by the evidence, in that the evidence showed, it is asserted:

"That value of the improvements made by the defendant on said land in controversy to be in and of the sum of $1,000, and not $50 as found by the jury, and the uncontroverted facts show a value of the improvements to be in the sum of $700."

The contention cannot be sustained. The finding, not complained of, that appellees were entitled to the possession of the land, was a finding against appellant's claim that he had a right to possess and use it during his life. In other words, it was a finding that he had no such contract as he claimed he had with P. V. Cochran, and that his occupancy of the land was that of a tenant at will only. Lyons v. Railway Co., 209 Pa. 550, 58 Atl. 924. Whether as such a tenant appellant had a right to remove improvements placed by him on the land (Hammond v. Martin, 15 Tex. Civ. App. 570, 40 S. W. 347), or equities entitled to recognition, arising from the circumstances under which he placed improvements on it (Van Zandt v. Brantley, 16 Tex. Civ. App. 420, 42 S. W. 617; Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071), we need not inquire; as such questions were not made by the pleadings and are not presented by the assignments. It follows from this view of the case that the error in the judgment is not that appellant recovered less than he was entitled to on account of improvements, but that he recovered anything at all on that account, and therefore is one of which he has no right to complain and of which appellees do not complain.

[2] 2. The other ground on which the judgment is attacked is that:

It is "contrary to law in this: It is a confiscation of the property of the defendant without compensation."

That the judgment is not subject to such an objection is clear.

No error of which either of the parties complained appearing in the judgment, it is affirmed.